IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM MEYERS, SR., et al.,
    *Plaintiffs*,

v.

BALTIMORE COUNTY, et al.,
    *Defendants*.

Civil Action No. ELH-10-0549

**MEMORANDUM OPINION**

Ryan Meyers (the "decedent" or "Ryan") died in 2007, after he was repeatedly tased during the course of an arrest. In 2010, the decedent's parents, William Meyers, Sr. and Anna Mae Meyers, and his brother, William Meyers, Jr., as personal representative of Ryan's estate, filed suit against Baltimore County and three of its police officers, including Officer Stephen Mee. Plaintiffs alleged, *inter alia*, the use of excessive force, in violation of federal and Maryland law. *See* Complaint (ECF 1) and Amended Complaint (ECF 3, "Am. Compl.").[1] Among the federal and state claims raised in the Amended Complaint, plaintiffs asserted in Count III a claim under 42 U.S.C. § 1983, predicated on defendants' alleged violation of the decedent's Fourth Amendment rights. Am. Compl. ¶¶ 31-37. In Count V, plaintiffs alleged that

---

[1] The Amended Complaint, filed on March 17, 2010, is the operative pleading. The original Complaint, filed less than two weeks earlier, did not include William Meyers, Jr. as a plaintiff. ECF 1 at 1.

    The Proposed Pretrial Order indicates that the decedent's parents have since died. *See* ECF 75 at 4. However, their deaths have no impact on the legal issues addressed here. Moreover, defense counsel concedes that the parents' wrongful death claims may be pursued by the personal representatives of their estates. *See* ECF 78.

defendants' actions violated Articles 24 and 26 of the Maryland Declaration of Rights. *Id.* ¶¶ 42-45.

All four defendants moved for summary judgment. ECF 33. The motion was fully briefed and, after argument, Judge Benson Legg granted summary judgment on September 28, 2011. *See* ECF 45; *see also Meyers v. Baltimore Co.*, 814 F. Supp. 2d 552 (D. Md. 2011). In doing so, Judge Legg analyzed plaintiffs' claims under the Fourth Amendment. ECF 45 at 6. With respect to Officer Mee, Judge Legg found that the officer was entitled to the protection of qualified immunity.

Thereafter, plaintiffs noted an appeal to the Fourth Circuit. ECF 47. The Fourth Circuit focused on plaintiffs' Fourth Amendment claim, stating in a footnote that it need not address the legal standards applicable to the Maryland constitutional claims because plaintiffs did not address their State claims. *See Meyers v. Baltimore County, Md.*, 713 F.3d 723, 730 n.7 (4th Cir. 2013). In a published opinion, the Fourth Circuit reversed Judge Legg's entry of summary judgment as to Officer Mee, and remanded the case to the trial court for further proceedings. *See id.* at 732; *see also* Memorandum to Counsel (ECF 55), at 1 ("Judge Legg's judgment in favor of Officers Romeo and Gaedke was affirmed in its entirety, and plaintiffs' claims against those officers are no longer viable.").

As a result of Judge Legg's retirement, the case has been reassigned to me. Trial is scheduled for November 2013.

Following the remand, Officer Mee has asserted that plaintiffs are precluded from arguing at trial that different legal standards apply with respect to Count III, the Fourth Amendment excessive force claim, and Count V, the claim of excessive force under the

Maryland Declaration of Rights. ECF 65 ("Mee Mem."). In essence, Mee maintains that the defense of qualified immunity is available to him under both Maryland and federal law, because plaintiffs did not argue otherwise on appeal. In support of his argument, Mee cites the "law of the case" doctrine, the "mandate rule," and principles of waiver. *Id.* at 2-4. Subsequently, in a Proposed Pretrial Order dated October 28, 2013, plaintiffs asserted, under the "mandate rule," that, in light of the Fourth Circuit's opinion, Officer Mee is barred from raising any defense based on qualified immunity. *See* ECF 75 at 2.

For the reasons stated below, I conclude that plaintiffs have not waived their right to argue that, with respect to the Maryland constitutional claim, qualified immunity does not apply. I also conclude that Officer Mee is not precluded under the "mandate rule" from raising the defense of qualified immunity as to the federal claim of excessive force.

### Procedural Background

Plaintiffs' Amended Complaint contains multiple counts: Count I ("Survival Act"); Count II ("Wrongful Death"); Count III (excessive force claim brought under 42 U.S.C. § 1983, alleging violation of the Fourth Amendment); Count IV (negligent training and supervision claim, brought against Baltimore County); Count V (Maryland constitutional claims for excessive force); and Count VI (negligence claim against Baltimore County).[2]

Defendants moved to bifurcate, so as to proceed first with discovery and a trial on the claims brought against the individual defendants, and to stay discovery as to the "custom, policy,

---

[2] The Amended Complaint also included Count VII, claims against Baltimore County under the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* and the Rehabilitation Act, 29 U.S.C. § 794. *See id.* However, in their opposition to defendants' motion for summary judgment, plaintiffs abandoned Count VII. *See* ECF 40 at 1 n.1.

and practice" claims against Baltimore County until after completion of the first trial. *See* ECF 9, 9-1. Plaintiffs did not oppose the motion to bifurcate, ECF 11, which Judge Legg subsequently granted. ECF 32.

On December 21, 2010, defendants moved for summary judgment as to all claims. ECF 33. As Officer Mee notes, Mee Mem. at 1, defendants had argued:

> Since there is no Fourth Amendment violation the plaintiffs' claims under the Maryland Declaration of Rights also fail. *See*, *Richardson v. McGriff*, 762 A.2d 48, 56 (Md. 1999) (federal case law interpreting the Fourth Amendment is controlling authority for excessive force claims under Article 26 of the Declaration of Rights because "we have long recognized that Article 26 is *in pari materia* with the Fourth Amendment.").

ECF 33-1 at 33 n.16. Further, defendants maintained that, "'[i]f the court finds that Officer Mee violated the Fourth Amendment then he is still entitled to qualified immunity because such an interpretation of the law was not clearly established.'" Mee Mem. at 1 (quoting ECF 33-1 at 33). Defendants did not raise any state law immunity arguments in connection with their summary judgment motion.

In opposing defendants' motion for summary judgment, plaintiffs argued, among other things, that qualified immunity was unwarranted as a matter of law, given the facts of this case. *See* ECF 40 at 14-17. However, plaintiffs did not assert that, as a matter of Maryland law, qualified immunity is altogether inapplicable to state constitutional claims, such as the claims contained in Count V. As noted, in Count V plaintiffs alleged, *inter alia*, that Officer Mee violated Articles 24 and 26 of the Maryland Declaration of Rights in connection with Ryan Meyers's arrest and death. *Id.* ¶ 43. Further, they alleged that Baltimore County is liable for any Maryland constitutional violations committed by its police officers, on the basis of respondeat

superior. *Id.* ¶ 44. In addition, Baltimore County is alleged to have violated Articles 24 and 26 by failing properly to train, discipline, and supervise its officers. *Id.* ¶¶ 43-45.

In granting summary judgment in favor of all defendants, Judge Legg did not differentiate between the federal and Maryland constitutional claims. The analysis began by observing: "Each of the Plaintiffs' claims rests on the existence of a single underlying wrong, the use of excessive force to effect a seizure in violation of Ryan Meyers's Fourth Amendment rights." *Meyers*, 814 F. Supp. 2d at 557. Applying a Fourth Amendment standard, Judge Legg concluded that Officer Mee's conduct in administering the first three tases was objectively reasonable. *Id.* at 559-560. The court further concluded that, although the last six "stun mode" tases could not be deemed objectively reasonable as a matter of law, Officer Mee was nonetheless entitled to qualified immunity. *Id.* at 560-61.

On appeal, plaintiffs argued, *inter alia*, that the force used against Ryan Meyers was unreasonable and excessive, and that the officers were not entitled to qualified immunity. *See* Brief of the Appellants, March 26, 2012, 4th Cir. Case No. 11-2192, ECF 21 at 15-32; *see also Meyers*, 713 F.3d at 727. But, plaintiffs did not argue that Judge Legg erred with respect to Count V, on the ground that qualified immunity is not available as a defense to a Maryland constitutional claim. The Fourth Circuit thus focused solely on plaintiffs' Fourth Amendment claim under 42 U.S.C. § 1983. In a footnote, 713 F.3d at 730 n.7, the Fourth Circuit said:

> In conducting its analysis, the district court did not consider separately the plaintiffs' federal and state law claims, stating that "[e]ach of the [p]laintiffs' claims rests on the existence of a single underlying wrong, the use of excessive force to effect a seizure in violation of [Ryan's] Fourth Amendment rights." 814 F. Supp. 2d at 557. The plaintiffs do not argue on appeal that the district court erred in construing their complaint in this manner or in conducting a single analysis of their federal and state law claims. Accordingly, our analysis focuses solely on whether the officers' conduct violated Ryan's Fourth Amendment rights.

> To the extent that the doctrine of qualified immunity does not shield a state official from liability for alleged violations of the Constitution of Maryland, *see Okwa v. Harper*, 360 Md. 161, 757 A.2d 118, 140 (2000), or that any of the claims arising under Maryland law require a different analysis than the plaintiffs' Section 1983 claim, those issues have not been raised by the plaintiffs, and, accordingly, are waived for purposes of this appeal. *See United States v. Hudson*, 673 F.3d 263, 268 (4th Cir. 2012) (issues not raised in opening brief are waived).

The Fourth Circuit reversed and remanded and, as noted, the case was reassigned to me. On March 11, 2013, the parties submitted a status report noting their disagreement on the law applicable to the Maryland constitutional claims raised in Count V. *See* ECF 59. In a letter dated March 22, 2013, I asked counsel to brief the issue of whether, under the law of the case or waiver, Count V is subject to the same legal analysis as the Fourth Amendment claim contained in Count III. ECF 60.[3] Officer Mee submitted a memorandum on August 23, 2013 (ECF 65, "Mee Mem."), and plaintiffs responded on September 13, 2013 (ECF 69, "Pla. Mem."). In a subsequent filing, plaintiffs raised a "mandate rule" argument of their own, asserting that Officer Mee is precluded from raising the defense of qualified immunity with respect to any Maryland constitutional claims. *See* ECF 75 at 2.

**Analysis**

A. Legal Standard

Claims brought under 42 U.S.C. § 1983, alleging the use of excessive force in effectuating an arrest or other seizure, are governed by the Fourth Amendment's prohibition against "unreasonable" seizures. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989). As the Fourth Circuit has explained, "[w]e determine whether an officer has used excessive force to effect an arrest based on a standard of 'objective reasonableness,' taking into

---

[3] I also continued the bifurcation order entered by Judge Legg. ECF 60.

account 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Meyers*, 713 F.3d at 732-33 (quoting *Graham*, 490 U.S. at 396).

Under federal law, "[t]he doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer,* 677 F.3d 656, 661 (4th Cir.) (quoting *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151 (2001)), *cert. denied*, ___ U.S. ___, 133 S.Ct. 789 (2012). *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Bland v. Roberts*, 730 F.3d 368, 2013 WL 5228033, at *19, slip op. at 52 (4th Cir. Sept. 18, 2013). "Qualified immunity extends to protect officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint,* 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir.) (en banc), *cert. denied*, ___ U.S. ___, 132 S.Ct. 781 (2011)); *accord Durham v. Horner,* 690 F.3d 183, 188 (4th Cir. 2012). The qualified immunity doctrine serves two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

A qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right," *Saucier*, 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the

situation he confronted.'" *Merchant*, 677 F.3d at 662 (citation omitted). The "two inquiries . . . may be assessed in either sequence." *Id.* at 661-62; *accord Pearson*, 555 U.S. at 236 (2009) (judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, ____ U.S. ____, 132 S.Ct. 1235, 1245 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034 (1987)). "To be clearly established, a right must be sufficiently clear that 'every reasonable official would [have understood] that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards* ____ U.S. ____, 132 S.Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 563 ___ U.S. ___, 131 S.Ct. 2074, 2078, 2083 (2011) (some internal quotation marks and citations omitted).

If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818-19. In determining whether a right was clearly established, courts in this circuit "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of

the state in which the case arose,'" as of the date of the conduct at issue. *Doe ex rel. Johnson v. S.C. Dept. of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir.) (citations omitted), *cert. denied*, ___ U.S. ___, 131 S.Ct. 392 (2010).[4]

Articles 24 and 26 of Maryland Declaration of Rights are the state constitutional counterparts to the Fourteenth and Fourth Amendments, respectively, and both provisions are ordinarily interpreted *in pari materia* with their federal analogs. *See, e.g.*, *Littleton v. Swonger*, 502 F. App'x 271, 274 (4th Cir. 2012) ("Articles 24 and 26 are construed *in pari materia* with the Fourth and Fourteenth Amendments of the U.S. Constitution"); *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 847-48 (D. Md. 2012); *Dent v. Montgomery County Police Dept.*, 745 F. Supp. 2d 648, 661 (D. Md. 2010) (Articles 24 and 26 "are construed *in pari materia* with the Fourteenth and Fourth Amendments of the United States Constitution, respectively"); *Doe v. Dept. of Pub. Safety and Corr. Servs.*, 185 Md. App. 625, 636, 971 A.2d 975, 982 (2009) (Article 24 "is *in pari materia* with the Due Process Clause of the Fourteenth Amendment"); *Padilla v. State*, 180 Md. App. 210, 226, 949 A.2d 68, 78 (cataloging cases and stating that "the cases are legion in which Maryland Courts have construed Article 26 *in pari materia* with the Fourth Amendment to the United States Constitution"), *cert. denied*, 405 Md. 507, 954 A.2d 468 (2008).

Of import here, however, qualified immunity is not a defense to an excessive force claim brought under Articles 24 and 26 of the Maryland Declaration of Rights. *See Littleton*, 502 F. App'x at 274 & n.2 (citing *Okwa v. Harper,* 360 Md. 161, 757 A.2d 118, 140 (2000)); *see also Wallace v. Poulos*, 2009 WL 3216622, at *15 (D. Md. Sept. 29, 2009) (qualified immunity not a

---

[4] As the Fourth Circuit has explained, for purposes of "clearly established," it is not necessary that the precise conduct at issue has previously been held unlawful. *Meyers*, 713 F.3d at 734.

defense to Article 24 claim). Accordingly, a court addressing an excessive force claim brought under Maryland constitutional law, pursuant to Articles 24 and 26, will assess the reasonableness of an officer's actions, applying the same standard used for an analogous federal constitutional claim. *Henry*, 652 F.3d at 536; *Okwa*, 360 Md. at 203-05; 757 A.2d at 141 (relying on U.S. Supreme Court precedent). But, unlike a federal constitutional claim, a Maryland constitutional claim under Articles 24 and 26 is not subject to an analysis that considers whether the right in question "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant*, 677 F.3d at 662 (citation omitted). Instead, a court may consider potentially applicable state law immunities. *See, e.g., Henry*, 652 F.3d at 536 (discussing applicability of Maryland Tort Claims Act, Md. Code (2009 Repl. Vol., 2012 Supp.), § 12-101 *et seq.* of the State Government Article).

B. Count V claims

Officer Mee has taken the position that, "to the extent Count V (Maryland Constitution) is still a viable count it is the law of the case that it is subject to the same legal analysis as the Fourth Amendment claim." ECF 59 at 1. He maintains that plaintiffs are precluded from arguing that their federal and state constitutional claims should be analyzed differently in any respect. *See* Mee Mem. at 1-2. In effect, Mee contends that qualified immunity applies to the state claims, even though Maryland law does not recognize the defense of qualified immunity. Officer Mee points out that, in opposing defendants' motion for summary judgment, plaintiffs never argued that, as to the merits, the state constitutional claims are subject to a different analysis, nor did they argue that a different immunity analysis applies to the federal and state

claims. *Id.* at 1. On appeal, Mee adds, plaintiffs "again failed to argue that the federal and state constitutional claims should be treated differently in any respect." *Id.* at 2.

Further, according to Officer Mee, the Fourth Circuit's footnote addressing the state constitutional claims bars plaintiffs from arguing on remand that a different standard applies to those claims. *Id.* (citing *Meyers*, 713 F.3d at 730 n.7). He invokes the "law of the case" doctrine, the "mandate rule," and principles of waiver. *See id.* at 2-4.

Plaintiffs dispute Officer Mee's contention that they have waived any arguments concerning their state constitutional claims. As plaintiffs explain, before the trial court they "took the position that qualified immunity did not apply at all in the context of this litigation." Pla. Mem. at 2-3. That is so, plaintiffs indicate, because the facts of this case made qualified immunity improper with respect to the federal constitutional claims, and because it is well settled that qualified immunity is not a defense to state constitutional claims. *See id.* Plaintiffs also disagree with Officer Mee's characterization of the Fourth Circuit's mandate. *See id.* at 3.

Plaintiffs interpret Officer Mee's argument as extending to their claims against Baltimore County. *See* Pla. Mem. at 1-2. In response, they emphasize that the case has been bifurcated, and they cite a Fourth Circuit footnote in *Meyers* that said: "'We do not address the extent to which Baltimore County may remain subject to trial for the events leading to Ryan's death. We leave for the district court's determination whether any claims asserted against the County should be dismissed in light of our holding.'" *Id*. at 2 (quoting *Meyers*, 713 F.3d at 735 n.9).

Having reviewed the parties' supplemental briefing, I conclude that plaintiffs are not barred, based on waiver or otherwise, from arguing that qualified immunity does not apply to the Maryland constitutional claim contained in Count V of the Amended Complaint.

As an initial matter, the alleged waiver is of no consequence to the threshold question of the substantive legal standard to prove an excessive force claim under Articles 24 and 26. That is because it is well settled that the same standard applies under the state and corresponding federal provisions. *See,* e.*g.*, *Smith v. Bortner*, 193 Md. App. 534, 544, 998 A.2d 369, 375 (2010) ("Maryland cases have said that the standard for analyzing claims of excessive force by police officers are the same under Articles 24 and 26 of the Maryland Declaration of Rights and that the test is one of objective reasonableness, as set forth in the U.S. Supreme Court's Fourth Amendment case of *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865 [] (1989).") (collecting cases). In other words, a violation of Articles 24 and 26 based on excessive force is analyzed, in the first instance, under the same legal standard applicable to the § 1983 claim under the Fourth Amendment. This would explain plaintiffs' focus on the federal claims, as well as Judge Legg's failure to address the Maryland constitutional claims.

It is also worth noting the practical impact of Officer Mee's arguments, if this Court were to adopt them. It is well established that the defense of qualified immunity does not apply to Maryland constitutional claims. *See Littleton*, 502 F. App'x at 274 n.2. In effect, then, Mee has asked me to misapply the law. In particular, he contends that the court should permit a qualified immunity defense to Maryland constitutional claims, notwithstanding that federal and state courts alike have rejected that position.

Moreover, Judge Legg's focus on the Fourth Amendment count was logical for several reasons. For one, the parties' briefing did not squarely present the issue that Officer Mee now raises. In seeking summary judgment, defendants did not invoke any state law immunities, which might have prompted the Court to differentiate the state claims from the federal claims.

*See* ECF 33 and 33-1. Judge Legg's approach also made sense in light of plaintiffs' remaining claims. Plaintiffs had abandoned Count VII, which contained the only other federal claims. *See* ECF 40 at 1 n.1. Other than the Fourth Amendment claim, the Complaint's remaining counts all raised state law claims, which are subject only to this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Because Judge Legg could have declined to exercise supplemental jurisdiction over the state law claims in the event that the federal claims were dismissed, *see id.* § 1367(c)(3), it is understandable that plaintiffs emphasized the viability of the Fourth Amendment claim, and that the judge apparently regarded the federal claim as paramount.

Contrary to Officer Mee's contentions, the Fourth Circuit's opinion does not require this Court to treat the federal and state constitutional claims identically. The Fourth Circuit stated that arguments regarding the standards applicable to the state constitutional claims "have not been raised by the plaintiffs, and, accordingly, are waived *for purposes of this appeal.*" *Meyers*, 713 F.3d at 730 n.7 (emphasis added). In my view, the Fourth Circuit's footnote represents an attempt to explain why the Fourth Circuit did not address on appeal the legal standards applicable to the state law claims.[5] There is no indication, either in the footnote or elsewhere in the opinion, that plaintiffs would be precluded on remand from raising any arguments regarding the state constitutional claims.

The cases on which Officer Mee relies lend little support to his argument. The law-of-the-case and waiver cases he references involved issues that were decided by the trial court, only

---

[5] As authority, the Fourth Circuit cites *United States v. Hudson*, 673 F.3d 263, 268 (4th Cir. 2012). *Hudson* stands for the proposition that an argument not raised in an appellate brief is waived, in the sense that the appellate court will not address that argument. *See* 673 F.3d at 268. *Hudson* did not address remand. *See id.*

to be abandoned on appeal. *IGEN Intern., Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 308 (4th Cir. 2003) (appellate court declined to address issue decided by trial court but not challenged on appeal); *Federation of Advertising Industries v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) (where district court "explicitly denied [plaintiff's] claim for damages, plaintiff could not pursue the damages issue that it failed to pursue on appeal); *Concrete Works of Colorado, Inc. v. City and County of Denver*, 321 F.3d 950, 992-93 (10th Cir. 2003) (district court could not properly address issue on remand, where district court had previously decided the issue and appellate court found on initial appeal that issue had been waived); *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 206 n.6 (4th Cir. 1982) (issue decided by trial court but not raised on initial appeal should be treated as law of the case). In other words, the cases involved situations in which a district court had addressed and decided an issue that was later waived on appeal. In this case, however, the standards applicable to plaintiffs' state constitutional claims were not decided by Judge Legg.

Mee's argument is not strengthened by the "mandate rule." Under the mandate rule, "it is indisputable that a lower court generally is bound to carry the mandate of the upper court into execution and [may] not consider the questions which the mandate laid at rest." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (citations and quotation marks omitted). Put another way, on remand a district court is required to "'implement both the letter and spirit of the . . . mandate, taking into account [the appellate] opinion and the circumstances it embraces.'" *Georgia Pacific Consumer Products, LP v. Von Drehle Corp.*, 710 F.3d 527, 536 n.13 (4th Cir.) (quoting *Bell,* 5 F.3d at 66 (citations and quotation marks omitted)), *cert. denied*, --- S.Ct. ----, 2013 WL 5507685

(Oct. 7, 2013).[6] Here, the Fourth Circuit affirmed the granting of summary judgment for two officers, while reversing the district court's granting of summary judgment to Officer Mee on qualified immunity grounds, and "remand[ed] this matter to the district court for further proceedings consistent with this opinion." *Meyers*, 713 F.3d at 735. Nothing in the Fourth Circuit's opinion requires application of qualified immunity in the context of plaintiffs' claims in Count V.

To be sure, in opposing summary judgment plaintiffs could have argued that qualified immunity, even if potentially applicable in the context of their federal constitutional claims, is irrelevant to their state constitutional claims. And, before the Fourth Circuit, plaintiffs could have argued that the district court erred because, in effect, it applied qualified immunity with respect to the state constitutional claim. But, plaintiffs instead pursued a broader argument that sought to revive their federal constitutional claim, which was central to the viability of the federal litigation.

Notably, the Fourth Circuit left "for the district court's determination whether any claims asserted against the County should be dismissed in light of [its] holding." *Meyers*, 713 F.3d at 735 n.9. Because plaintiffs' claims have been bifurcated, it is not necessary at this juncture to address Baltimore County's liability. For now it is sufficient to conclude that plaintiffs remain

---

[6] The mandate rule also "'forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court.'" *Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). That aspect of the mandate rule is not relevant because, as explained above, the district court did not squarely address the legal standard applicable to the Count V claims.

free to argue that qualified immunity is not a defense to plaintiffs' state constitutional claims against Officer Mee (Count V), and that some other legal standard applies.

C. Qualified Immunity

Plaintiffs have taken the position that Officer Mee is precluded under the "mandate rule" from raising a qualified immunity defense at trial. ECF 75 at 2. Officer Mee disagrees. *Id.* at 4. I conclude that, with respect to the federal claims, Officer Mee is correct.

*Willingham v. Crooke*, 412 F.3d 553 (4th Cir. 2005), provides guidance. In *Willingham*, brought pursuant to 42 U.S.C. § 1983, plaintiff argued that the district court erred by submitting the question of qualified immunity to the jury. *Id.* at 558. The Fourth Circuit rejected plaintiff's argument that the Court's prior appellate decision, in which it concluded that defendant was not entitled to summary judgment on qualified immunity grounds, barred a qualified immunity defense at trial. *Id.* at 559. That prior appeal, the Court explained, required it to view the evidence in the light most favorable to plaintiff; in contrast, the jury was not bound to view the facts in that manner. *See id.*

The same reasoning holds true here. In reversing summary judgment for Officer Mee, the Fourth Circuit reviewed the facts in the light most favorable to plaintiffs as the non-moving parties. *Meyers*, 713 F.3d at 726-27. The Court explained, *id.* at 733:

> We emphasize that our analysis is based on the plaintiffs' version of the facts as drawn primarily from the depositions of Ryan's family members, including Billy [Meyers] who stated that he was inside the residence and directly observed Officer Mee's conduct. Although a jury ultimately may find that the officers' version of the events is more credible, we are not permitted to make such credibility determinations when considering whether a police officer properly was held immune from suit under the doctrine of qualified immunity.

*See also id.* at 734 (reiterating that second step of qualified immunity analysis requires court to view facts in light most favorable to plaintiffs). Here, as in *Willingham*, the Fourth Circuit's holding does not foreclose Officer Mee from relying on a qualified immunity defense. *See Willingham*, 412 F.3d at 559; *see also, e.g.*, *Schultz v. Braga*, 455 F.3d 470 (4th Cir. 2006) (citing *Willingham*, 412 F.3d at 559).[7]

**Conclusion**

For the foregoing reasons, I conclude that plaintiffs retain the right to argue that qualified immunity does not apply to their Maryland constitutional claim (Count V). Conversely, Officer Mee is not barred under the "mandate rule" from raising a qualified immunity defense as to the Fourth Amendment claim under § 1983 (Count III).

Date: November 1, 2013           /s/
                                  Ellen Lipton Hollander
                                  United States District Judge

---

[7] Notably, in *Willingham*, the Fourth Circuit went on to hold that the district court committed reversible error by submitting to the jury the ultimate question of whether the defendant was entitled to qualified immunity. 412 F.3d at 559-60. Instead, the Court explained, where "a dispute of material fact precludes a conclusive ruling on qualified immunity at the summary judgment stage, the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury." *Id.* at 560; *accord Gregg v. Ham*, 678 F.3d 333, 339 (4th Cir. 2012).